NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| AKMAL A. AQUIL,<br><br>          Plaintiff,<br><br>     v.<br><br>CITY OF NEWARK,<br><br>          Defendant. | No. 24cv10021 (EP) (CLW)<br><br>**OPINION** |

**PADIN, District Judge.**

Plaintiff Akmal A. Aquil, previously proceeding *pro se*, brought this action against Defendant the City of Newark.[1] Compl. at 1. He also sought to proceed *in forma pauperis*. D.E. 1-1 ("IFP Application"). The Court granted Plaintiff's IFP Application but dismissed the Complaint after its screening under 28 U.S.C. § 1915(e)(2)(B). The Court provided Plaintiff with 45 days to file an amended complaint curing the deficiencies set forth in this Court's previous Opinion. *See* D.Es. 4-5. In its previous Opinion, the Court concluded that Plaintiff failed to state a religious discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII")[2] under a failure to accommodate theory. D.E. 4.

On March 14, 2025, Plaintiff, represented by counsel as of February 24, 2025, filed an Amended Complaint. Am. Compl. Because Plaintiff was granted IFP status, the Court must again screen the Amended Complaint for *sua sponte* dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

---

[1] Plaintiff's first name has been spelled in several ways throughout the pleadings. *See, e.g.*, D.E. 9 ("Amended Complaint" or "Am. Compl."). at 1-2 (spelling Plaintiff's name "Akamala" and "Akmala"). The Court will spell his name as it appears in the original complaint ("Akmal A. Aquil"), which was written by Plaintiff, when he was proceeding *pro se*. D.E. 1 ("Compl." or "Complaint").

[2] 42 U.S.C. §§ 2000e-2000e-17.

For the reasons explained below, the Court will allow Plaintiff's claims of religious discrimination claims under Title VII to **PROCEED**.

**I.    BACKGROUND**[3]

Plaintiff works for the City of Newark's Department of Water and Sewer Utilities.[4] Am. Compl. ¶¶ ix, xi. During the relevant time period, Plaintiff's supervisors were Kareem Adeem and James Harvey. *Id.* ¶¶ x, xviii. On Fridays, Plaintiff attends Muslim religious services referred to as Jummah (Maghrib), which last between 30-45 minutes. *Id.* ¶ vii. Adeem, the Director of the Department of Water and Sewer Utilities, would often attend the same services at the same location as Plaintiff, and was aware of Plaintiff's religious convictions and Friday prayer attendance. *Id.* ¶¶ xi-xii.

Plaintiff would return to worksites after attending Jummah. *Id.* ¶ x. However, on at least four separate occasions, Plaintiff "suffered the issuance of Notice of Final Disciplinary Actions" (suspensions) because he attended Friday Jummah services, despite Plaintiff returning to work after they were over. *Id.* ¶¶ vii, xii. To avoid disciplinary actions related to his attending Jummah, Plaintiff requested a work schedule of Sunday through Thursday. *Id.* ¶ xv. Adeem denied this request. *Id.* ¶ xv. On January 3, 2025, Plaintiff filed an official request for accommodation in the form of taking one Friday, January 17, 2025, off from work; his request was denied on January 14, 2025. *Id.* ¶ xvi.[5]

---

[3] The facts in this section are taken from the well-pled factual allegations in the Amended Complaint, which the Court presumes to be true for purposes of resolving the motions. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[4] The name of the organization for which Plaintiff works seems to be inconsistently written throughout the Amended Complaint as the "Water Department" and "Department of Water and Sewer." *See generally* Am. Compl. The Court will refer to it as stated in the letterhead of the "Time Off Request Form:" "Department of Water and Sewer Utility." D.E. 15-2.

[5] Throughout the Amended Complaint and other related documents, Plaintiff's counsel seems to misdate this request, referring to it either as a "January 14, 2025" request and a "January 17, 2025"

2

The New Jersey Office of Administrative Law ("NJOAL") engaged in the adjudication of four related employment discrimination claims arising from the disciplinary actions taken by the City of Newark against Plaintiff: (i) CSV 08761-2023N; (ii) CSV 087622023; (iii) CSV 08766-2023; (iv) CSV 08768-2023.[6]  *Id*. at 5.  On March 17, 2025, Judge Daniel J. Brown, A.L.J., concluded that Plaintiff engaged in conduct unbecoming a public employee and that the suspensions he received for missing work were justified.  D.E. 16 at 13.  On April 30, 2025, the Civil Service Commission ("CSC") considered Plaintiff's appeal of the NJOAL decision, conducting a *de novo* review of the matter.  D.E. 15 at 1.  The CSC found that the imposed penalties were appropriate and dismissed the appeal.  *Id.* at 1, 3.

It appears Plaintiff has filed at least one charge with the Equal Employment Opportunity Commission ("EEOC") regarding this dispute with his employer.  *Id.* ¶ i.  In response, the EEOC issued Plaintiff:  (1) a notice of right to sue on April 8, 2024, with respect to Charge No. 524-2023-02557; and (2) a notice of right to sue on August 6, 2024, with respect to Charge No. 524-2023-02557.[7]  D.E. 15-1.  Plaintiff claims that his EEOC alleged "unlawful workplace discrimination based on the City of Newark's . . . failure to provide a religious accommodation in the form of reasonable time off on each Friday to attend Muslim religious services . . . ."  Am. Compl. ¶ ii.

---

request.  Am. Compl. ¶ xvi; D.E. 14 at 8.  However, based on a copy of the request submitted to the Court, it appears that Plaintiff filed the request on January 3, 2025, for time off to be taken on January 17, 2025, and one of Plaintiff's supervisors, James Harvey, denied the request on January 14, 2025.  D.E. 15-2.  Herein, the Court will refer to these documents as the "January 14, 2025, Denial" and the "January 3, 2025, Request."

[6] Plaintiff has not provided the Court with his initial complaint filed against the City of Newark before the NJOAL, which was the subject of that adjudication.  It appears, however, that Plaintiff had appealed several suspensions he faced as a result of missing work to attend Jummah services.  D.E. 16.

[7] Because the charge number in both notices is the same, the Court assumes both concern the same charge filed with the EEOC.  However, based on the limited information filed in this matter, the Court is unable to determine with more specificity how these two letters are related.

However, Plaintiff has not provided the Court with any documents he filed with the EEOC. Thus, the Court relies on the Amended Complaint and other attachments as best as it can to discern the contents of those filings.

As best as the Court can tell, the disciplinary actions (suspensions) taken against Plaintiff and adjudicated in the NJOAL/CSC proceedings cover the same conduct as Plaintiff's EEOC charge and for which the EEOC granted Plaintiff a "right to sue" letter. In addition to these claims, Plaintiff brings an additional claim of discrimination occurring from the January 14, 2025, Denial of his request for time off. This claims arose after Plaintiff received the right to sue letters, and Plaintiff has not provided the Court with any other filings with the EEOC.

## II.    LEGAL STANDARD

Pursuant to 28 U.S.C. § 1915, the Court may excuse a litigant from prepayment of fees when the litigant "establish[es] that he is unable to pay the costs of his suit." *Walker v. People Express Airlines, Inc.*, 886 F.2d 598, 601 (3d Cir. 1989). However, courts must review an IFP plaintiff's complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune. 28 U.S.C. § 1915(e)(2)(B). The legal standard for dismissing a complaint for failure to state a claim when conducting an IFP screening is identical to the legal standard used when evaluating Rule 12(b)(6) motions.[8] *Robinson v. Phelps*, 946 F. Supp. 2d 354, 361 (3d Cir. 2013) (citing *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999)).

---

[8] The Court's preliminary review pursuant to 28 U.S.C. § 1915 does not, however, determine whether the allegations in the Complaint would survive a properly supported motion to dismiss filed by Defendants after service. *See Richardson v. Cascade Skating Rink*, No. 19-8935, 2020 WL 7383188, at *2 (D.N.J. Dec. 16, 2020) ("[T]his Court recognizes [a] § 1915(e) screening determination is a preliminary and interlocutory holding, subject to revision at any time prior to entry of final judgment.") (internal quotation marks omitted).

To survive a *sua sponte* screening for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[9] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Courts, therefore, engage in a two-part analysis. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). *First*, the Court separates the factual and legal elements of a claim. *Id*. *Second*, the Court determines whether the facts are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 211.

For the first part of the analysis, the Court accepts all "well-pleaded allegations as true and draw[s] all reasonable inferences in favor of the plaintiff," but the Court may disregard any legal conclusions. *City of Cambridge Retirement. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "A pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

For the second part of the analysis, the operative pleading must allege actual facts that show Plaintiff is entitled to relief, rather than merely alleging that Plaintiff is entitled to relief. *Fowler*, 578 F.3d at 210 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

---

[9] In addition to reviewing the complaint, the Court can also consider "'any document integral to or explicitly relied upon in the [c]omplaint . . . without converting the motion [to dismiss] into one for summary judgment.'" *Aliano v. Twp. Of Maplewood*, No. 22-5598, 2023 WL 4398493, at *2 (D.N.J. July 7, 2023) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)). Courts may consider documents that are attached to the complaint as well as matters of public record. *Raucci v. Candy & Toy Factory*, 145 F. Supp. 3d 440, 451 (E.D. Pa. 2015) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)).

Whether the claim is "plausible" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 677.

## III. ANALYSIS

### A. Administrative Exhaustion

Title VII prohibits discriminatory employment practices based upon an individual's "race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). However, "before commencing a Title VII action in court, the employee must first file a charge with the EEOC." *Powell v. Verizon N.J., Inc.*, No. 19-08418, 2022 WL 2187997, at *2 (D.N.J. June 17, 2022) (citing *Fort Bend Cnty., Tex. v. Davis*, 587 U.S. 541, 543 (2019)).[10] After filing a charge with the EEOC, a plaintiff must receive a right to sue letter before filing an action with the district court. *See Burgh v. Boro. Council of Boro. of Montrose*, 251 F.3d 465, 470 (3d Cir. 2001); *Powell*, 2022 WL 2187997, at *2; *see also Devine v. St. Luke's Hosp.*, 406 F. App'x 654, 656 (3d Cir. 2011) ("Failure to exhaust administrative remedies, while not a jurisdictional defect, is a ground to dismiss a case for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).").

Plaintiff's first EEOC right to sue letter was issued on April 8, 2024; a second was issued on August 6, 2024 (both for the same charge: Charge No. 524-2023-02557). D.E. 15-1 at 1-2. Plaintiff states that that an EEOC charge he filed alleged "unlawful workplace discrimination based on the City of Newark's . . . failure to provide a religious accommodation in the form of reasonable time off on each Friday to attend Muslim religious services. . . ." D.E. 14 at 4. By

---

[10] Under Title VII, if the allegations concern conduct occurring in a state subdivision that has a fair employment agency of its own empowered "to grant or seek relief," the complainant should first file his claim with the state or local agency. 42 U.S.C. § 2000e-5(c). The complainant then has 300 days following the challenged practice, or 30 days after receiving notice that state or local proceedings have ended (whichever is earlier), to file a charge with the EEOC. 42 U.S.C. § 2000e-5(e)(1). If the state or local agency has a "worksharing" agreement with the EEOC, the complainant may file his charge with one agency, and that agency will then relay the charge to the other. *Fort Bend Cnty.*, 587 U.S. at 543.

obtaining these right to sue letters, Plaintiff appears to have exhausted his administrative remedies for some alleged instances of religious discrimination. However, because Plaintiff did not provide the Court with a copy of the EEOC charge, the Court cannot exactly determine which claims are included within its scope. For present purposes, however, the Court will assume that the EEOC charge includes all instances of alleged discrimination occurring before the right to sue letters were issued. Applying this assumption to the Amended Complaint's allegations, Plaintiff has thus exhausted his remedies with respect to all alleged instances of discrimination except for the January 14, 2025, Denial (given it occurred *after* the right to sue letters were issued).

Indeed, Plaintiff has not alleged he filed a subsequent EEOC charge. However, "a plaintiff need not file an additional EEOC charge if the allegations of the civil complaint are fairly within the scope of (1) the pending EEOC charge *or* (2) the investigation arising from the charge." *Simko v. United States Steel Corp.*, 992 F.3d 198, 207 n.7 (3d Cir. 2021). The exhaustion inquiry is highly fact specific. *Id.* The Court must "examine carefully the prior pending EEOC complaint and the unexhausted claim on a case-by-case basis before determining that a second complaint need not have been filed." *Robinson v. Dalton*, 107 F.3d 1018, 1024 (3d Cir. 1997).

Because the Court does not have access to Plaintiff's charge filed with the EEOC and does not know the exact basis of the charge, it cannot determine with certainty as to whether the January 14, 2025, Denial falls within the scope of the pending charge. *See Simko*, 992 F.3d at 208. However, Plaintiff claims that that the original EEOC charge alleged "unlawful workplace discrimination based on the City of Newark's . . . failure to provide a religious accommodation in the form of reasonable time off on each Friday to attend Muslim religious services. . . ." D.E. 14 at 4. Based on this information, the January 14, 2025, Denial seems to fall within the scope of the

7

pending charge. Therefore, for purposes of this screening,[11] Plaintiff has exhausted his administrative remedies for the January 14, 2025, Denial as well.[12]

### B. Title VII Claims

The Court now evaluates the sufficiency of Plaintiff's exhausted claims.[13] The Court construes the Amended Complaint to allege that Defendant failed to accommodate Plaintiff's religious obligations by neither providing him with reasonable time off to attend Friday religious services nor approving an alternative work schedule from Sunday through Thursday. Am. Compl. ¶¶ ii, xv.

Title VII defines "religion" as "all aspects of religious observance and practice, as well as a belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's . . . religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). Title VII makes it unlawful "'for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees . . . .'" *Aliano*, 2023 WL 4398493, at *3 (quoting *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977)).

---

[11] For the avoidance of doubt, this holding solely applies to the screeding of the Amended Complaint as Plaintiff seeks to proceed IFP. The Court may reconsider the exhaustion inquiry if and when Plaintiff provides a copy of any filed EEOC charges to the Court, as well as at the motion to dismiss stage.

[12] This inquiry is a disjunctive test. *Simko*, 992 F.3d at 207 n.7. Once the Court determines that the allegations of the civil complaint are fairly within the scope of the pending charge, no analysis of the second prong—whether the allegations are fairly within the scope of the investigation arising from the charge—is necessary. *See id.*

[13] Because Plaintiff has failed to allege details concerning the charge(s) filed before the EEOC, the Court cannot determine with sufficient specificity the exact contents of what Plaintiff has brought before the EEOC. Therefore, the Court considers Plaintiff to have exhausted any claim that is contained within the charge filed with the EEOC, which Plaintiff can clarify as this case proceeds.

To establish a *prima facie* case for a failure to accommodate a religious belief claim, a plaintiff must show that he: (1) held a sincere religious belief that conflicted with a job requirement; (2) informed his employer of the conflict; and (3) was disciplined for failing to comply with the conflicting requirement. *Saqa v. Fac. Mut. Ins. Co.*, No. 23-3994, 2024 WL 939689, at *4 (D.N.J. Mar. 5, 2024) (citing *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008)); *see Worthy v. Unilever U.S., Inc.*, No. 23-17570, 2024 WL 3326039, at *5 (D.N.J. July 8, 2024) (applying this standard to a religious discrimination claim).

To begin, Plaintiff must allege that he had a sincerely held religious belief and that this belief conflicted with a job requirement. *Aliano*, 2023 WL 4398493, at *2, *see id.* at *5 (quoting *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017)) ("While 'no court should inquire into the validity or plausibility of' a plaintiff's alleged beliefs, it is nonetheless incumbent upon the court to ensure that the alleged beliefs are rooted in a plaintiff's religion and are entitled to the broad protection guaranteed thereunder.").

The Court must engage in a two-part inquiry. *First*, the plaintiff's belief must be "sincerely held," which is a question of fact. *United States v. Seeger*, 380 U.S. 163, 185 (1965). *Second*, the belief must be "religious in nature, in the [plainitff's] scheme of things." *Africa v. Commw. of Pa.*, 662 F.2d. 1025, 1032 (3d Cir. 1981). *See Blackwell v. Lehigh Valley Health Network*, No. 22-2260, 2023 WL 362392, at *4 (D.N.J. Jan. 23, 2023) ("It is not this Court's authority to 'question the centrality of particular beliefs or practices of faith, or the validity of particular litigants' interpretations of those creeds.'") (quoting *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)). "[T]o adequately plead a 'religious belief,' a plaintiff must allege some facts regarding the nature of her belief system." *Aliano*, WL 4398493, at *5.

9

Here, Plaintiff claims that he is a practicing Muslim and that he attends Jummah weekly. D.E. 16 at 9. Plaintiff alleges that Jummah is a religious service of "particular significance" to the Muslim religion. *Id.* Plaintiff further alleges that he has requested a change in his work schedule to attend Jummah and has faced disciplinary action for choosing to attend Jummah during his work schedule. **CITE.** Taken together, these allegations satisfy the first requirement that Plaintiff's religious belief be sincerely held and is religious in nature.

Plaintiff also adequately alleges that his sincere religious beliefs conflict with his job requirements. Indeed, the NJOAL decision outlines several incidents spanning from May 6, 2022, to January 6, 2023, in which Plaintiff left his worksite to attend a Jummah service, resulting in disciplinary actions (in the form of suspensions). D.E. 16 at **5-8**. Such allegations, which the Court accepts as true, suffice to show that Jummah attendance conflicted with Plaintiff's job duties.[14] Thus, Plaintiff has satisfied the first element of a religious discrimination claim.

To establish the second element, Plaintiff must show that he informed his employer of this conflict. Plaintiff alleges that his supervisor, Kareem Adeem, was aware of Plaintiff's firmly held religious convictions and Friday prayer service. *See* Am. Compl. ¶ xii. Furthermore, Plaintiff alleges that he requested a different work schedule (working Sunday through Thursday rather than Monday through Friday) to avoid the conflict. *Id.* ¶ xv. Another supervisor, James Harvey, also seemed to be aware of the conflict, as he allegedly stated that he did not allow Plaintiff to leave

---

[14] Despite the fact that the Amended Complaint states that "Plaintiff's attendance at Friday's Jummah religious services did not interfere with nor conflict with Plaintiff's duties and responsibilities as a City of Newark Water Inspector," Am. Compl. ¶ ix, the Court construes the Amended Complaint and attached documents to insinuate the exact opposite: that Plaintiff's attendance at religious services *did* interfere with his work duties, as outlined by the NJOAL report and as claimed at various points throughout his pleadings. *See generally* D.E. 16.

the worksite to pray. *Id.* ¶ xvii. These allegations suffice to show that Plaintiff informed his employer of the conflict, and therefore, Plaintiff has satisfied the second element as well.

Finally, Plaintiff must allege that he was disciplined for failing to comply with the conflicting requirement. He does so in the Amended Complaint by alleging that he suffered the "issuance of Notice of Final Disciplinary Actions" as a result of attending Jummah services. *Id.* ¶ vii; *see also* D.E. 14 at 3 (listing the suspensions Plaintiff received as a result of the conflict). These allegations suffice to show, for present purposes, that Plaintiff was disciplined for failing to comply with the conflicting requirement. In sum, interpreting the Amended Complaint (and other related documents) liberally, Plaintiff has stated substantive Title VII claims, and, therefore, the Court will allow these claims to **PROCEED** past the IFP screening stage.

IV. **CONCLUSION**

For the reasons stated above, the Court will allow Plaintiff's claims of religious discrimination claims under Title VII to **PROCEED.**

An appropriate Order accompanies this Opinion.

July 10, 2025
Date

_Evelyn Padin_
Evelyn Padin, U.S.D.J.

11